```
 1 | McGREGOR W. SCOTT
   | United States Attorney
 2 | R. STEVEN LAPHAM
   | ELLEN V. ENDRIZZI
 3 | Assistant U.S. Attorneys
   | 501 I Street, Suite 10-100
 4 | Sacramento, California  95814
   | Telephone: (916) 554-2700
 5 |
 6 |
 7 |
   |              IN THE UNITED STATES DISTRICT COURT
 8 |
   |            FOR THE EASTERN DISTRICT OF CALIFORNIA
 9 |
10 | UNITED STATES OF AMERICA,    )
   |                              )   NO. Cr. S-06-0035 MCE
11 |             Plaintiff,       )
   |                              )   PLEA AGREEMENT
12 |       v.                     )
   |                              )
13 | LAUREN WEINER,               )   DATE:   May 30, 2006
   |                              )   TIME:   8:30 a.m.
14 |             Defendant.       )   COURT:  Courtroom 9
   |                              )
15 |
16 |      Pursuant to Rule 11(c) of the Federal Rules of Criminal
17 | Procedure, the United States and the defendant, Lauren Weiner,
18 | through her counsel, agree as follows:
19 |                                  I.
20 |                             INTRODUCTION
21 |      A.  Scope of Agreement:  This document contains the complete
22 | Plea Agreement between the United States Attorney's Office for the
23 | Eastern District of California (the "government") and the defendant
24 | regarding this case.  This Plea Agreement is limited to the United
25 | States Attorney's Office for the Eastern District of California and
26 | cannot bind any other federal, state, or local prosecuting,
27 | administrative, or regulatory authorities.
28 | ////
```



MAY 30 2006


CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

1

**B. Court Not a Party:** The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.

### NATURE AND ELEMENTS OF CHARGES.

**A. Acknowledgment of Charges:** The defendant acknowledges that she has been charged by Superseding Information with conspiracy in violation of 18 U.S.C. § 371.

**B. Explanation and Understanding of Charge:** Defendant has read the charges against her and those charges have been explained to her by her attorney. Defendant fully understands the nature and elements of the crimes charged and what the government would be required to show in order to obtain a conviction.

**C. Waiver of Indictment:** Defendant understands that the offense with which she is charged is a felony and that she may insist that the government proceed by Indictment. Notwithstanding this fact, the defendant waives prosecution by Indictment and consents to proceeding by Information. The defendant will execute a

written waiver of indictment in open court at the time she enters her guilty plea.

### III.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea:** The defendant will plead guilty to the single count contained in the Superseding Information, agrees that she is in fact guilty of that charge, and that the facts set forth in the Factual Basis attached hereto as Exhibit A are accurate.

**B. Elements of the Offense:** The defendant understands that to be convicted of the crime to which she is pleading guilty the government would have to show beyond a reasonable doubt each of the following elements:

(1) That beginning in or about June 2005, and ending on or about January 13, 2006, there was an agreement between two or more persons to commit at least one of the crimes as charged in the information - namely, arson in violation of 18 U.S.C. § 844(f) and (i);

(2) The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

(3) One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

**C. Restitution:** By signing this Agreement, the defendant also agrees that the Court must order the payment of restitution for the full loss, if any, caused by the defendant's wrongful conduct.

**D. Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the

United States Probation Office immediately before the sentencing hearing.

**E. Agreement to Cooperate:** The defendant agrees to cooperate fully with the government and any other federal state, or local law enforcement agency as the government directs.

**1. Meaning of Cooperation:** As used in this plea agreement, "cooperation" means that the defendant must: (1) respond truthfully and completely to all questions posed to her by law enforcement personnel; (2) testify truthfully before any grand jury, at trial, or any other court proceeding which she is requested or required to attend; (3) never falsely inculpate or exculpate anyone; (4) attend all meetings, grand jury sessions, trials, and other court proceedings at which her presence is requested by the government or compelled by subpoena or court order; (5) produce voluntarily any and all documents, records or other tangible evidence the government requests; and (6) not participate in any criminal activity during the time period in which she is cooperating with the government.

After the defendant pleads guilty, the defendant and her attorney agree that the government and any law enforcement personnel may interview the defendant at any time, provided defense counsel is afforded prior notification and the opportunity to be present at the interview.

**2. Consequences of Failure to Cooperate:** If the defendant commits any crime, or if she fails to cooperate as defined in this agreement, the government will be no longer bound by its representations concerning the limits of criminal prosecution and sentencing set forth herein. Whether the defendant has violated the

terms of the plea agreement will be determined according to a probable cause standard.

If the defendant violates the terms of the plea agreement she will then be subject to prosecution for any federal crime that the government knows about, including, but not limited to, perjury, obstruction of justice or making a false statement, and reinstatement of any charges dismissed as a consequence of this plea agreement. Furthermore, because disclosures under this plea agreement constitute a waiver of the Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and information the defendant has provided. Moreover, prosecutions known at this time, not time barred by any statute of limitations as of the date of this plea agreement, may be commenced in accordance with this paragraph, notwithstanding that the statute of limitations may expire between the signing of this plea agreement and the commencement of any such prosecutions, and the defendant agrees to waive all defenses based on the statute of limitation or delay of prosecution with respect to any known prosecutions that are not time barred as of the date of this plea agreement.

If the defendant is determined to have violated any provision of this plea agreement: (1) all statements she made to law enforcement pursuant to his cooperation agreement, and any testimony she may give, shall be admissible in any criminal, civil or administrative proceeding hereafter brought against her; and (2) she shall assert no claim under the U.S. Constitution, any statute, Rule 11(e)(6), Rule 410 of the Federal Rules of Evidence, or any other federal rule, that such statements made by the defendant, before or

5

after executing this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

In the absence of a violation of the plea agreement by the defendant, the parties agree that, under Rule 11(e)(6) of the Federal Rules of Criminal Procedure and Section 1B1.8 of the United States Sentencing Guidelines, the information provided by the defendant pursuant to his cooperation agreement which may tend to incriminate her with respect to the conduct for which she is pleading guilty, will not be used against her either as the basis for additional charges or as justification for a higher sentence than the government has agreed to recommend.

## IV.

### THE GOVERNMENT'S OBLIGATIONS

**A. No Further Charges:** The government agrees to move at the time of judgment and sentencing to dismiss the Indictment No. Cr. S-06-0035 MCE as to this defendant and to bring no further charges arising out of the facts set forth in Exhibit A.

**B. Recommendations:** The government is free to recommend any sentence up to and including the statutory maximum sentence.

## V.

### MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the Court can impose on the charge to which the defendant is pleading guilty is 5 years incarceration, a 2 year period of supervised release, a fine of $250,000, and a special assessment of $100. By signing this Agreement, the defendant acknowledges that the Court can order the payment of restitution for the full loss caused by the defendant's

wrongful conduct. The defendant further agrees that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B. Violations of Supervised Release:** The defendant understands and agrees that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI.

### SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (2005)) and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory Guideline sentencing range for this case pursuant to the Sentencing Guidelines. Defendant further understands that the Court will consider whether there is a basis for departure from the Guideline sentencing range (either above or below the Guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Guidelines Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guideline variables and therefore stipulate to the following:

    **1. Base Offense Level:** Pursuant to U.S.S.G. § 2X1.1(a) and §2K1.4(a)(1), the base offense level is 24.

    **2. Specific Offense Characteristics:** Pursuant to U.S.S.G. § 2X1.1(b)(2), the base offense level should be decreased by 3 levels.

    **3. Victim-related Adjustments:** Pursuant to U.S.S.G. § 3A1.4, the offense was a felony that involved, or was intended to promote a federal crime of terrorism, thus increasing the base offense level to 32.

    **4. Role in the Offense Adjustment:** None.

    **5. Obstruction Adjustment:** None.

    **6. Decrease for Acceptance of Responsibility:** Pursuant to U.S.S.G. § 3E1.1, the defendant is entitled to a 3 level decrease in the base offense level due to her assistance to authorities and timely notification of her intention to plead guilty.

    **7. Criminal History:** Pursuant to § 3A1.4, the defendant's Criminal History Category is VI.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty she is waiving the following constitutional rights:

////

1.      **1. Public and Speedy Trial:** If defendant were to plead
2. not guilty to the charges in the indictment, she would be entitled
3. to a public and speedy trial.

   **2. Jury Trial, Presumption of Innocence, Unanimous Verdict:** The defendant has an absolute right to a jury trial. At that trial, the jury would be instructed that the defendant is presumed innocent and that she carries that presumption throughout the trial until such time as the government overcomes the presumption by evidence adduced at the trial. The jury would be further instructed that it could not convict the defendant unless all twelve jurors agreed that the government had proved guilt beyond a reasonable doubt.

   **3. Confrontation of Witnesses:** At the trial, the defendant would be entitled to see, hear and confront the witnesses and the evidence against her. These witnesses would be testifying under the penalty of perjury and would be subject to cross-examination by the defendant's attorney.

   **4. Compulsory Process:** At the trial, the defendant would be entitled to present witnesses and other evidence in her own behalf and, if the witnesses refused to appear voluntarily, the defendant would be entitled to use the court's process to compel their attendance.

   **5. Privilege Against Self Incrimination:** At a trial, the defendant would have a privilege against self-incrimination so that she could not be compelled to testify and the jury could be instructed that no inference of guilt could be drawn from the defendant's failure to testify.

////

6. **Right to Appeal:** If, after a trial, the defendant were convicted, she would have a right to appeal the conviction.

7. **Representation of Counsel:** The defendant is entitled to be represented by competent counsel through all stages of the case, including appeal, and if the defendant could not afford an attorney one would be appointed for her by the court.

Defendant understands that by pleading guilty she is waiving all of the rights set forth above. Defendant's attorney has explained those rights to her and the consequences of her waiver of those rights and the defendant freely and voluntarily consents to said waiver.

B. **Waiver of Appeal Rights and Collateral Attack:** The defendant agrees to waive all rights to appeal this plea and sentence and to attack collaterally this plea and sentence whether by way of a motion pursuant to 28 U.S.C. § 2255 or otherwise, provided she is sentenced in accordance with the parties' stipulations.

If the defendant's conviction on any of the counts to which she is pleading is ever vacated at the defendant's request, or her sentence is ever reduced at her request, the government shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this agreement; and (3) to file any new charges that would otherwise be barred by this agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this agreement, the defendant agrees to waive any objections, motions, and defenses she might have to the government's decision. In

particular, she agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

## VIII.

### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Agreement.

DATED: MAY 30/2006

JEFFREY WEINER
Weiner & Ratzan, P.A.
Counsel for Defendant

**B. Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the

11

Sentencing Guidelines which may apply to my case. No other promises or inducements have been made to me, other than those contained in this Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: MAY 30/2006

LAUREN WEINER
Defendant

C. **Attorney for United States:**

I accept and agree to this Plea Agreement on behalf of the government.

DATED: 30 MAY 2006

McGREGOR W. SCOTT
United States Attorney

By: _____
R. STEVEN LAPHAM
ELLEN V. ENDRIZZI
Assistant U.S. Attorneys

## EXHIBIT "A"

### Factual Basis for Plea

In August 2005, Lauren Weiner met with Eric McDavid and Zachary Jenson in a Philadelphia, PA coffee shop. At this meeting they discussed different ideas for protest and activism. Among these was the idea of using explosives to destroy commercial and/or government property. McDavid was the first to raise the idea, explaining that he knew a recipe for making homemade explosives. Each person agreed to research possible targets and to include a confidential source in future discussions. Shortly after this meeting, Weiner told a confidential source about the discussion, including the idea of using explosives.

On the weekend of November 18-20, 2005, Lauren Weiner met with Eric McDavid, Zachary Jenson, and a confidential source at McDavid's parents' residence in Foresthill, CA. There she participated in further discussions during which plans were formulated to commit acts of eco-terrorism. At the outset of this meeting, Eric McDavid advised the others that their discussion itself constituted a criminal act. The group agreed to reassemble in early January 2006 at a remotely situated residence in Northern California to manufacture homemade explosives and detonate these explosives at various commercial and government targets. Weiner voiced her approval for targeting cellular phone towers and other corporate facilities. She agreed to support these plans by obtaining literature to assist in the manufacture of explosives and later purchased two books, <u>The Poor Man's James Bond</u> and <u>The Survival Chemist</u> with her credit card.

From January 8-13, 2006, Lauren Weiner maintained temporary residence at a cabin in Dutch Flat, CA. In this span of time, she discussed with McDavid, Jenson, and the confidential source, plans to construct homemade explosive and incendiary devices, target commercial and government facilities with these destructive devices, and claim credit for these acts in a public communication that justifies the group's actions.

On January 10, 2006, Weiner traveled with McDavid, Jenson, and a confidential source to the United States Forest Service(USFS) Institute of Forest Genetics(IFG) in Placerville, CA. There she participated in a reconnaissance operation, the purpose of which was to determine the site's potential as a target. To hide her identity, she provided a fake name to an IFG employee the group made contact with. On January 11, 2006, Weiner assisted in purchasing several items to be used in making destructive devices, including: canning jars, coffee filters, mixing bowl, hot plate, petroleum jelly, a gasoline can, bleach, extension cord, and battery testers. On January 12, 2006, Weiner assisted in the initial stages of manufacturing homemade explosives. Using a battery hydrometer, she took readings of a liquid mixture, which was to become a precursor chemical for making explosive material. On January 13, 2006, Weiner was arrested after purchasing additional items to be used in making destructive devices, including respiratory masks and a mixing bowl to replace the one that was damaged the previous day.